All right. Good morning, Your Honors. Jeffrey Baird. May it please the Court. This is a case of medical evidence and credibility. Here, the doctors who had interacted with the claimant firsthand observed her presentation in a clinical setting, or clinicians who had treated her for her mental health impairments. All came to essentially the same conclusion, that she would have trouble sustaining work or withstanding stressors, stressors associated with work. The ALJ found, relying on a state agency reviewing physician, that all of these medical opinions could be rejected because the claimant had various credibility problems of a characterological nature. So the theory the ALJ was using was that, well, each of these doctors and therapists could well have been deceived, could well have been taken in by subjective statements that weren't credible. But that seems implausible, given the complex set of findings each of the clinicians made. Are you challenging the ALJ's determination that LaRonge's physical impairments, such as her left knee, back, and obesity, are not disabling? I'm only challenging the mental. Okay. Because I didn't see in your briefing where you were making that physical challenge. Correct. It's purely a mental case. And in a sense, a lot of the credibility factors the ALJ used dealt with inconsistencies on physical impairments. So the theory that the ALJ used was, well, if in general she might have dishonesty, it must have, that dishonesty must have tainted every medical opinion. But didn't she make different representations as to her mental state to the folks who treated her physical ailments as compared to the mental health providers? That's true. That wasn't about her physical well-being. It was about her mental health well-being. Okay. But the doctors who actually saw her presentation and interviewed her, or the therapists who treated her, came to the consistent conclusion she couldn't withstand stressors. Correct me if I'm wrong, but I thought the ALJ, he discredited her testimony. Right. And so then, having discredited her testimony, he said that the doctors relied, the fact that there was no real objective evidence in which they could rely on informing their opinions regarding her mental health, and any reliance on her oral presentations couldn't give much credit to it because he found her not credible. So was there sufficient objective medical evidence to support their findings? Sure. In each of the clinical set of findings, there were observations of presentation, clinical signs of agitation, or depressed affect. Those are physical observations. Also, the testing instruments, the PHQ-9 and the Beck Depression Inventory, those are statistically evaluated, and they've been rated as good instruments. But they didn't. Everything was consistent throughout. Also, mental impairments are characteristically subjective, but a clinician making professional subjective judgments would constitute a clinical objective finding under Lester versus Chater. It's the kind of thing a psychologist or a psychiatrist would have to do, to be consistent of subjective statements and interview answers and history, and then clinical observations, such as of affect and demeanor. Is it your view, even if, I realize that you also challenged the finding on her adverse credibility. Right. If we were to disagree with you on that, is it still your position that the medical, the discrediting of her treating physicians was inappropriate? That could stand on the objective evidence from the record. Correct. The clinicians who evaluated her took everything into account, including observations of presentation, clinical history, et cetera. But we can't retry it here, so why couldn't the ALJ have looked at it differently? You know, we do this all the time. A lot of times here, the thing that might be a little bit different, there's a whole lot of people against one person, as it were. Correct, Your Honor. And the one person was only a derivative doctor, who on page 300 of the excerpts gives about a sentence each to some of the clinicians of record, and didn't even see the long-term... But I don't want to reweigh the evidence, so let's talk in terms of... Legal error. I'm saying the reasons to reject each one of these corroborating clinicians who observed the claimant firsthand, for each one, the legal reasons presented were insufficient. None of these clinicians overly relied on subjective reporting, for example. They used... That's weighing the evidence. Give me a legal error that doesn't weigh the... I mean, insufficiency of the evidence is always a little bit of a tough rock to push uphill. Believe me, it's hard for us. But sometimes there's a legal error that someone just did something wrong. So is there something that the ALJ did wrong that you can point me to? Right. In each case, the ALJ rejected the clinician's opinion in the five different ones, or I forgot how many total examinations, seven. But the ALJ mainly relied on the argument, the claimant's subjective reporting undermined each physician. That's right. But that's implausible, that each of these clinicians would be somehow deceived or misled. They see these people all the time. So in your view, he didn't place enough... He erred by not looking at the objective manifestations. Correct. The objective manifestations in each of the corroborating independent clinicians who saw the claimant. I was going to ask you, tell me why the ALJ erred in discrediting Ms. LaRange. Well, it was an unsympathetic credibility assessment. You have to give great weight to an ALJ's credibility assessment. It just sort of misunderstood her. For example, she said she was homeless when she was applying for GAU, and she kind of was. She was going from place to place. So she could say, yes, I've been staying with my husband, but maybe that's two days a week. And the statements she made to her doctors, the physical examiners, for example, tended to be histrionic, or in some cases overly stating what she could do. She seemed to have given more favorable testimony to her well-being to the physical providers than the mental providers. That seems to be consistent. She did tell them her mental impairments were lesser, the limitations were lesser. But the clinicians who examined her for mental purposes found specifically and justified with objective findings such as they can be. They found she's not going to tolerate stressors. And that was an interesting credibility factor. The ALJ kept, I think it's on page 15 of the excerpts, cited, well, here's a stressor that made her decompensate again. Okay, but she's just not responding to stressors. Her real underlying condition's improving, but the point is she couldn't tolerate stressors. That's the reason she couldn't tolerate the world of work. She'd have trouble, again, adapting consistently on a sustained and regular basis. Good morning. May it please the Court, my name is Terry Shea. I'm appearing for the Acting Commissioner of Social Security. I ask you to understand that I'm a little hard of hearing. I do have hearing aids, but sometimes they don't work so well. So if I ask you to repeat something or look like I didn't quite get it, that's probably exactly the case. So my friend is correct. This case is basically a weighing of the medical evidence versus a person with very poor credibility. And the decision that the ALJ's assessment that the psychologists who examined her relied so heavily on her self-reports and even ignored their own objective testing, relying on her self-reports, that this made their final analysis less valid. It's interesting that some of the things that my friend refers to as objective or something that would show malingering actually are not. They are simply other self-reports. The PHQ-9 is a nine-issue self-report. The Back Depression Inventory is another 21-issue self-report. So none of these things are objective. So you have five people who examined LaRange indicated that are mental, five doctors were disabling, and then you have two providers from the Seattle Clinic who were helping treat LaRange that they indicated the same. So I guess it is, I'm not saying that means you lose, right? Because of that, we don't just count witnesses up. Like you could have a robbery case where someone's seen on a video and then five people in the family come and say that they were at home at the time, but then we can look at the video and the person's there. But that is a lot of, you know, so you only have, so the ALJ stated the overall objective evidence of record, quote-unquote, supported Dr. Reed's opinion but not Dr. Clark's. So what evidence does the phrase overall objective medical evidence refer to? Well, overall objective evidence is the fact of her physical evidence not corroborating her physical claims. Her real lack of credibility where there's just consistently inconsistent statements. The thing that most troubled the judge was her recent criminal history, but that was just one, and the fact that she wasn't really forthcoming about it, but also her lack of candor about her substance abuse, and the fact that the treating records from the Seattle Indian Health Board, Ms. Bailey and the nurse, Clark, was that she was actually improving over time. There were instances that would have been horribly stressful for anyone when her great-nephew's body was found, when her mom, who was quite ill, had to go back into the hospital. But the point was, like, those were almost normal stressors for anybody. When you went back to the long-term treatment notes of her actual treating providers, it showed consistent improvement or stability on medications. And the ALJ's assessment was, well, these examining psychologists didn't see that. They relied too much on her statements to them or reports that she filled out, which, again, are things under her own control. When he says that they relied too heavily on her statements, what did he base that on? I mean, the reports reflected the objective test as well. But he says they relied too heavily on her. Is there anything in their reports that says that? Well, you know, if we turn to the reports, it basically does say she reports those things. Can you give me an example that highlights the point you're making? Just one of the reports. One of the doctors, you know. Where the ALJ says that he relied too heavily on her statements. I mean, I need to study these reports a little bit more. I mean, there's a lot here. We had three Social Security cases today, and I'm having a hard time keeping them all straight. But, you know, off the top of your head, if you could point to me the one that sort of demonstrates this point that the ALJ just makes, that the mental health evaluators relied too heavily on her self-statements. I can't remember which doctor. No cognitive impairment on mental status exam. Nevertheless, I think she's really impaired because of what she said about this. That's just one of those really startling things. I was pushing counsel for the appellant, and I guess I'm pushing you in this direction. But does this sort of boil down to your position would be that he's asking us to re-weigh the evidence and the ALJ was there, so we have to apply whatever the appropriate deference is. But if there's a legal error, that, you know, that's what I'm sort of, a legal error, for example, if you can say, well, they applied the wrong law. Or say, in certain instances, maybe you can't rely on a certain kind of doctor to come to a conclusion over another type of doctor. I mean, is there anything like that here? I'm not aware of anything like that. Our position is that this is a very close call when you're trying to figure out whether psychologists are relying on actual testing or what the claimant told them. Even on her history, even though it was many years before. Well, this happened, so this meant she had bad judgment. This happened so she probably wouldn't get along in the workplace. But these bad, terrible events in her life were back in 1994 or 1996, and she had nonetheless managed to work for, I don't know, 9 or 10 years, and for unknown reasons kind of, you know, turned to a life of crime for a few years, ended up in jail consistently about that, and decided, well, I'm not going to do that anymore, which was a good decision. And she decided to get treatment, which was a good decision. But what the judge pointed to, the ALJ pointed to, was these inconsistent statements she made to different providers about what was going on in her life and compared, you know, basically, and what he consistently said was that the treating source, the Seattle Indian Health Board, showed a stable and steady improvement, which, you know, she had never admitted to. He had five or six reasons for finding her not credible. There's not legal error in any of those reasons. Given the recency, for example, of her criminal history, giving her, even though he gave her a chance to talk about her criminal history in the hearing, she was just kind of prevaricated about that. So you're basically, this is a close case, but you're saying the standard of review is your friend and that we should refer to the ALJ. Is there anything else you'd like me to address? No, I don't have anything. Your Honors, there is legal error because in rejecting the various clinicians, the ALJ has to provide specific and legitimate reasons, and the reasons provided weren't. The main principle was that she may be a characterologically troubled person so she can fool all of her doctors and treatment people at the Seattle Clinic. That's just implausible. They independently corroborated one another, and the Indian Health Center Clinic did the regular visits and they wrote down, and some of it was presentational questions, but just because they saw improvements off and on doesn't discredit their own conclusion, having seen her over and over, that she doesn't adapt well with stressors, that she'd have trouble sustaining regular and continuing work. I suppose we could cite the Garrison case, which says with mental health impairments, we have to look at what the doctors say in total. We can't just say that the improvement is permanent. Here she responded badly to stressors, and that's exactly what the clinician said would happen, and it did. So for their own purposes, each clinician did establish an objective and professional judgment basis for setting the limitations, and ALJ erred each time in rejecting each one by not giving specific legitimate reasons.
judges: Paez, Callahan, Selna